UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson-Terrell | Suzanne McKennon |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Richard Hikida | Pooja Shah |
| | Joel Siegel |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT SUPER BRIGHT LEDS INC.'S MOTION TO DISMISS PLAINTIFF SONYA VALENZUELA'S COMPLAINT (DKT. 13)**

### I. Introduction

On June 15, 2023, Sonya Valenzuela ("Valenzuela" or "Plaintiff") brought this action against Super Bright LEDS Inc. ("Super Bright" or "Defendant"). Dkt. 1 ("Complaint"). The Complaint asserts one cause of action for violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631. Complaint ¶¶ 27-34.

On August 17, 2023, Super Bright moved to dismiss the Complaint. Dkt. 13 (the "Motion"). On August 31, 2023, Valenzuela opposed the Motion, and made a request for judicial notice. Dkt. 16 (the "Opposition"). On September 7, 2023, Super Bright filed a reply. Dkt. 17 (the "Reply"). On the same date, Super Bright also filed a request for judicial notice, and opposed Plaintiff's request for judicial notice. *See* Dkts. 18, 20.

A hearing on the Motion was held on October 2, 2023, and the matters were taken under submission. For the reasons stated in this Order, the Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

### II. Factual Background

#### A. The Parties

Valenzuela is a citizen of California. Complaint ¶ 4. Super Bright is a Missouri corporation that sells LED lighting and accessories online. *Id.* ¶ 5. Super Bright allegedly owns, operates, and controls the website that is at issue in this action. *Id.*

#### B. Valenzuela Visits Super Bright's Website

While Plaintiff was in California, she allegedly visited Super Bright's website using a smart phone and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

had a brief communication with an agent of Super Bright through the website's chat feature. Complaint ¶ 4. It is alleged that Valenzuela was not notified that the chat was monitored, intercepted or recorded. *Id.* It is also alleged that Valenzuela's phone contained "integrated computers to enable web browsing." *Id.* ¶ 17.

   C.  Super Bright Allegedly Used a Third Party Spyware Company

Super Bright allegedly permitted LiveHelpNow to embed code into the chat feature of the Super Bright website. Complaint ¶ 10. This code is allegedly a type of routing software that automatically acquires and transmits user chat communications to LiveHelpNow without any active input from any human representative of either Super Bright or LiveHelpNow. *Id.* ¶ 11.It is alleged that LiveHelpNow thereby acquires chat communications by website visitors and reroutes them to computer servers it owns, controls, and maintains. *Id.* It is alleged that LiveHelpNow receives transcripts of Super Bright's chat communications with website visitors almost simultaneously or immediately after the communications occur. *See id.*

Valenzuela alleges that LiveHelpNow's software is integrated with Facebook, WhatsApp, and other subsidiaries of Meta, Inc. *Id.* ¶ 13. Meta allegedly identifies the interests of its users by monitoring a collection of their "offsite" activity, including private chat communications between Super Bright and visitors like Valenzuela. *Id.* ¶ 14. Meta then generates revenue by selling advertising space by allegedly using this information to identify offsite user interests. *Id.* It is alleged that, as a result, Facebook and WhatsApp send many targeted advertisements to visitors of Super Bright's website based on their website visits and interactions. *Id.* It is further alleged that Kustomer, Inc., another Meta subsidiary, allows Super Bright and others to use chat data from their support centers to re-engage dissatisfied customers. *Id.* ¶ 15. It is alleged that all this is part of an undisclosed plan by Meta to profit from private chats. *Id.* ¶ 13.

Valenzuela alleges that chat data is valuable because it provides information about what customers are thinking, which in turn facilitates targeted advertising that is valuable and effective. *Id.* ¶¶ 8, 15. Valenzuela also alleges that Super Bright's chat communications from its website are transmitted to website visitors by either cellular or landline telephones because the Internet allegedly works through a series of networks that connect such devices. *Id.* ¶ 18.

It is alleged that LiveHelpNow does not simply store the chat communications for Super Bright. *Id.* ¶ 16. Rather, it is alleged that LiveHelpNow uses its record of users' interactions with Super Bright's chat feature for data analytics and marketing and advertising to consumers. *Id.*

It is alleged that Super Bright did not disclose to Plaintiff that it was permitting LiveHelpNow to receive the communications at issue or that LiveHelpNow provided user data to Meta through an integration with Meta software. *Id.* ¶ 19. It is also alleged that Super Bright did not obtain the express or implied consent of Plaintiff or any similarly situated person as to the conduct at issue, and that none of those persons knew about the conduct. *Id.* ¶ 20.

   D.  Relief Requested

Valenzuela seeks to represent a class of users of Super Bright's website. Complaint at 10. On behalf of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

herself and the other members of the putative class, Valenzuela seeks an order that Super Bright's conduct violates CIPA, injunctive relief, statutory damages and an award of reasonable attorney's fees and costs. *Id.* at 10-11.

### III. Requests for Judicial Notice

Valenzuela requests judicial notice of three minute orders from a California Superior Court. These are cited in the Opposition. *See* Dkt. 16-1. Super Bright objects to this request on the ground that courts may not take judicial notice of the facts contained in court records. *See* Dkt. 20-2. Although judicial notice may not be taken of the facts asserted in court records, it is appropriate to consider the orders cited by Valenzuela as precedent that would support her legal positions in this matter. If the orders had been published, the request for judicial notice would not have been necessary. Therefore, Valenzuela's request is **GRANTED** for the limited purpose of considering these decisions as precedent that may be considered in connection with the similar legal issues presented in this action. In light of this determination, the alternative request for Judicial Notice by Super Bright as to a different Superior Court order is also **GRANTED** for the same limited purpose.

### IV. Analysis

#### A. Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading that states a claim must state facts sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell*, 266 F.3d at 988).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), allowing leave to amend is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

Cal. Penal Code § 631(a) provides that a person who does any of the following has acted in violation of CIPA:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephone communication system, or [ii] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.

    B.    Application

Valenzuela contends that LiveHelpNow violated each of the first three clauses of § 631(a). Valenzuela also argues that Super Bright is liable for this alleged conduct under the fourth clause of § 631(a).

    1.    <u>Whether Valenzuela Adequately Alleged LiveHelpNow Violated the First Clause of Cal. Penal Code § 631(a)</u>

Super Bright contends that the Complaint does not adequately alleged any violation of the first clause of § 631(a) because none of the communications at issue was made with "any telegraph or telephone wire, line, cable, or instrument . . . ." Cal. Penal Code § 631(a). Motion at 11-12.

The first clause of § 631 "protects only communications that are made over a 'wire, line, or cable.' " *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020). It does not apply to Internet communications. *See, e.g., Byars v. Hot Topic, Inc.*, No. EDCV221652JGBKKX, 2023 WL 2026994, at *8 (C.D. Cal. Feb. 14, 2023) ("There is another reason that at least the first clause of Section 631(a) does not provide a theory of Defendant's liability: Plaintiff's factual allegations, to the extent they can be construed as such, solely involve Defendant's internet-based activities on the Website."); *Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225, at *4 n.3 (N.D. Cal. Jan. 5, 2023) (holding "the first prong of Section 631 does not apply to internet communications"); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (noting "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet").

Other district courts have concluded that the first clause of § 631 does not cover Internet communications even when the Internet is accessed using a telephone. *See, e.g., Valenzuela v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

*Nationwide Mut. Ins. Co.*, No. 222CV06177MEMFSK, 2023 WL 5266033, at *8 (C.D. Cal. Aug. 14, 2023) ("Valenzuela attempts to circumvent the requirements of the first clause by pointing out that she has alleged she accessed the Website via her smartphone. . . . But in doing so, she was using her smartphone's *computer* function, not its *telephone* function."); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181, at *2 (N.D. Cal. May 24, 2023) ("Plaintiff accessed Defendant's website using the smartphone's *internet* capabilities, not the smartphone's *telephonic* capabilities. Thus, Plaintiff's argument fails because the statute—by its plain terms—does not apply to technologies other than telegraphs and telephones."); *Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV221702MWFJPR, 2023 WL 2469630, at *5 (C.D. Cal. Mar. 7, 2023) ("Here, the Court similarly declines to interpret the first clause as applying to smart phones which are wireless, despite their use of communication technologies which then are comprised of 'wire[s], line[s], cable[s], or instrument[s].'"); *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *6 (C.D. Cal. Mar. 7, 2023) ("the first clause of section 631(a) does not apply to communications with a smart phone or Wi-Fi-enabled laptop"); *cf. Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) (applying the first clause of § 631 and noting that "[a]lthough iPhones contain the word "phone" in their name, and have the capability of performing telephonic functions, they are, in reality, small computers.").

These decisions are persuasive. The Complaint alleges that Plaintiff used her smartphone's Internet browser to visit the website at issue, and that the smartphone can communicate both by the Internet and telephonically. Complaint ¶ 17. However, it does not allege that she accessed Super Bright's website telephonically.

Valenzuela argues that cell phone communications are treated as wire communications under the federal Wiretap Act. *See In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1139 (9th Cir. 2003) ("As noted, cellular telephone service, despite its apparent wireless nature, is within § 2510(1)'s definition of 'wire communication' because cellular service uses wire and cable connections to connect calls."); *Joffe v. Google Inc.*, 746 F.3d 920, 932 n.6 (9th Cir. 2013) (same). Even assuming that the standards are the same under the Wiretap Act and the CIPA, there is no allegation that Valenzuela made "wire and cable connections to connect calls." Rather, the Complaint alleges that Valenzuela used her smartphone's Internet browsing capabilities to visit Super Bright's website. There are no allegations as to any telephone calls. For this reason, *In re U.S.* and *Joffe* are distinguishable, and the Complaint does not adequately allege a violation of the first clause of § 631(a).

    2. <u>Whether Valenzuela Adequately Alleged LiveHelpNow Violated the Second Clause of Cal. Penal Code § 631(a)</u>

Super Bright contends that Valenzuela's claim fails to the extent it is premised on the second clause for two reasons. *First*, there is a "party exemption" and Valenzuela's claims effectively seek to hold Super Bright liable for some form of eavesdropping on its own communications. Motion at 13-15. *Second*, the communications at issue must have been intercepted "while" they were being transmitted, sent, or received, which Super Bright contends has not been alleged. Motion at 16-20.

      a) Party Exception

        (1) <u>Legal Standards</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

"Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). "Both statutes contain an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not." *Id.*; *see Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("participant recording was not meant to be included" in conduct barred by CIPA because "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (same). California law draws "a substantial distinction . . . between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 362 (1985). Thus, when a party to a conversation records it with a tape recorder, there is no violation of § 631. However, when a party to a conversation uses a phone extension to allow another, undisclosed person to listen, § 631 liability may attach. *Compare Ribas*, 38 Cal. 3d at 362 *with Rogers*, 52 Cal. App. 3d at 899.

"The party exception must be considered in the technical context of [each] case." *In re Facebook*, 956 F.3d at 607. The Ninth Circuit has held that "simultaneous, unknown duplication and communication of GET requests [which are sent by a user's computer to a website when the user visits that website] do not exempt a defendant from liability under the party exception." *Id.* at 608. "Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

Other district courts have applied the party exception to communications between users and websites. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021), distinguished "independent parties who mined information from other websites and sold it" and "a vendor that provides a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data." It was determined that the distinction between "aggregation of data for resale" and "a service provider" that does not "intercept[] and use[] the data itself" is significant because, in the latter case, the service provider "is an extension of" the website because it "provides a tool" that "allows [the website] to record and analyze its own data in aid of [its own] business" and therefore cannot fairly be characterized as "a third-party eavesdropper." *Id.* at 832-33. For this reason, *Graham* distinguished *In re Facebook*.

*Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022), also determined that, when the website used "software . . . merely [as] a tool . . . to record its own communications with [the] plaintiff," the provider of that software was not a "third party hired to eavesdrop on [the website's] communications . . . ." There, the operator of the website "deployed [the] recording software only on [its own] websites and . . . the recordings were stored and accessed on [the third party's] servers." *Id. Williams* also recognized that "a key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which may suggest that the software vendor independently 'uses' the gathered data in some way." *Id. Williams* also emphasized the limited nature of the recording at issue, which documented the user's consent to receive telemarketing phone calls rather than all the user's interactions across an entire website. *Id.* at *3-4.

Other courts have agreed with *Graham* and *Williams*. *See, e.g.*, *Byars v. Hot Topic, Inc.*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

EDCV221652JGBKKX, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023) (relying on *Graham* and *Williams* in determining that the allegation that the defendant allowed "at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain" was conclusory, and that "stor[ing] transcripts of Defendant's chat communications with 'unsuspecting' website visitors" does not make the defendant's vendor an eavesdropper); *American Eagle*, 2023 WL 2469630, at *7-8 ("Courts have determined that software like the alleged code employed by Defendant which intercepts in real time and stores transcripts is more akin to a tape recorder like the one used in *Rogers* than a friend against the door like in *Ribas*. . . . The pleadings, taken as true at this stage, nowhere suggest that the third party has the ability to use the information independently. The bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant."); *Cinmar*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *8-9 (same).

Other district courts have reached a different outcome. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021), determined that "a separate legal entity that offers 'software-as-a-service' and not merely a passive device" qualified as an eavesdropper. *Saleh* also rejected the contention that "any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party." *Id*. *Saleh* reasoned that "[t]he text of section 631(a) . . . does not contain any such exception, and indeed, [Defendants'] interpretation . . . would vitiate the statute's protections." *Id*.

A similar determination was made in *Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023). *Javier* concluded that it would be improper to "interpret[] the second prong of the statute . . . based on the intentions and usage of the prospective third party" because "the third prong of the statute already penalizes 'use'" and "reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id*. *Javier* also disagreed with *Graham* and *Williams* because *Ribas* emphasized "the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call" rather than "the wife's friend's intentions or the use to which they put the information they obtained." *Id*. However, *Javier* recognized that a software vendor would not be an "unannounced second auditor" if the vendor "does not have the *capability* to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)" or if "the ubiquity of services like [those of the vendor] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the defendant]." *Id*.

Two other decisions also varied from *Graham* and *Williams*. *See Valenzuela v. Nationwide Mut. Ins. Co.*, No. 222CV06177MEMFSK, 2023 WL 5266033, at *7 (C.D. Cal. Aug. 14, 2023) ("Whether the third party's use was purely for [the defendant's] benefit, rather than for its own benefit, is immaterial under the statute. Allowing a third party to listen in makes the third party liable for a violation of Section 631."); *Garcia v. Yeti Coolers, LLC*, No. 223CV02643RGKRAO, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (denying motion to dismiss because the plaintiff alleged "simultaneous eavesdropping" by software with "capabilities . . . significantly more sophisticated than [a] tape recorder").

Even courts that accepted *Javier* have rejected the argument that software without the capability simultaneously to disseminate customer data can be a form of eavesdropping. In *Keurig*, it was alleged that the defendant used one of a small number of available software providers, and that whichever third

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

party the defendant used was integrated with Meta and had the capability to sell customer data to Meta. 2023 WL 3707181, at *4. However, because the complaint did not allege facts sufficient to support either an inference that the defendant used one of those providers, or that Meta was integrated with one of those providers, it was determined that there was not an adequate allegation as to the presence of an eavesdropper. *Id.*

*Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023), reached a similar outcome. There, the complaint alleged that the plaintiff used the defendant's website and his "chat information [was] sent to" a third-party vendor, which was a "data mining company" that "analyz[ed] data and provid[ed] [the defendant] customer data metrics related to each conversation" the plaintiff had using the defendant's website. It was also alleged that the vendor "access[ed] and analyz[ed] the recorded conversation[s] to understand what [the defendant's] customers want, to increase sales, fix inefficiencies, and improve experiences." *Id.* Nevertheless, because the complaint did not "allege that [the vendor], or any other third party, can use the information obtained for any other purpose besides relaying it to [the defendant]," it was determined that it had not been alleged that the vendor had the capability to use plaintiff's chats for other purposes.

Finally, *Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023), considered allegations that the plaintiffs' chat communications had been "routed" through a server controlled by the vendor, that the vendor "directly receive[d] the electronic communications of visitors," and that the vendor "analyze[d] the customer-support agent interactions in real time to create live transcripts of communication." However, because "[t]hese allegations [did] not support a reasonable inference that [the vendor] has the capability to use these communications for any purpose other than furnishing them to [the defendant]," the plaintiffs had failed to state a CIPA claim.

The Superior Court cases cited by the parties reflect the same split between *Javier* and *Graham*. *See Licea v. Jockey International, Inc.*, 23STCV02906, Dkt. 16-2 at 9 (allegations were adequate because they "allege[d] that a third-party chat provider used the information gathered from [the defendant's] chat box communications in a manner that did not simply record the interactions for [the defendant's] use"); *Licea v. The Men's Warehouse, LLC*, 23STCV02964, Dkt. 16-3 at 4 (finding the allegations sufficient); *Licea v. Malwarebytes, Inc.*, CIVSB2224245, Dkt. 16-4 at 2-3 (specific facts had been alleged sufficient as to an agreement between the defendant and its vendor that would support an aiding and abetting claim); *Esparza v. Ecco USA Inc.*, Case No. 37-2023-00009235-CU-CR-CTL, Dkt. 22-1 at 4 (allegations inadequate because the vendor was retrieving information about the plaintiff's communication with the defendant from transcripts in electronic storage).

(2)     Application

The analysis of *Javier* is persuasive. The second prong of § 631 applies to those that "read[], or attempt to read, or to learn the contents or meaning of any" covered communication. The determination in *Graham* and *Williams, i.e.,* that a violation of the second clause could occur only when the information in the communication was actually used by the vendor, are not based on the actual language of the statute. Importing a "use" element into the second prong would also leave the second prong superfluous. Under the third prong, all those who "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, . . . information . . . obtained" from a covered communication are liable for a violation of § 631. *Javier* is also correct that *Ribas* and *In re Facebook* did not rely on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

listener's intentions or state of mind in determining whether the listener was a third party to the conversation. However, although the intention of the vendor is not part of the analysis, *Javier* appropriately recognizes that recording or storing a communication is not the same as reading it or learning its contents. Only the latter types of conduct violate CIPA. Thus, software that is used only to receive and store communications is functioning like the tape recorder in *Rogers*: the software does not have an independent capability to disclose the communications to any person.[1]

Courts that have applied *Javier*, recognize that an allegation that a vendor's software receives and stores website communications does not suggest that the vendor or its software has the capability to use these communications except to furnish them to the owner of the website. Courts that have followed *Graham* have also considered allegations regarding vendors who store website communications and report back to the website owner, but have held that these vendors do not have any independent capability to disclose the transcripts of chats. Finally, the factors considered by *Graham* and *Williams*, including whether the vendor recorded all the plaintiff's website activity and whether the vendor aggregated the plaintiff's communications with multiple websites, may be relevant in evaluating whether the vendor has the capability to use its record of the website communications for an independent purpose.

Notwithstanding the range of these decisions as well as certain of their common features, the allegations in the Complaint are not sufficient under *Javier*. Valenzuela contends that the eleventh through sixteenth paragraphs of the Complaint adequately alleged this element. Opposition at 20. The Complaint alleges that LiveHelpNow's software "acquires and transmits user chat communications," and "store[s] transcripts of [those] chat communications." Complaint ¶ 11. However, these allegations are inadequate for the same reasons stated in *Swarts*, *Yockey*, and other cases. If construed broadly, the allegations of the Complaint can be construed to state that the software receives and stores these communications. The Complaint alleges that the software is integrated with subsidiaries of Meta, Inc. including Facebook. *Id.* ¶ 13. LiveHelpNow's description of its Facebook integration, which is incorporated by reference into the Complaint, indicates that the Facebook integration permits data received from website chats and other sources to be organized together with data collected from Facebook in LiveHelpNow's database. *See* LiveHelpNow, *Facebook Integration* (Feb. 5, 2018), https://livehelpnow.net/blog/facebook-integration/. Even if Super Bright chose to use this integration, it has not been alleged that the software could simultaneously disclose Valenzuela's communications to anyone other than Super Bright.

Valenzuela next alleges that Meta and Kustomer use chat data in harmful ways. Complaint ¶¶ 14-15. However, because it has not been alleged that LiveHelpNow's software could simultaneously provide Valenzuela's chat data to Meta or Kustomer, these allegations are not material. Finally, Valenzuela alleges that LiveHelpNow's software "has the capability to use its record of Website users' interaction

---

[1] To the extent *Saleh*, *Nationwide*, and *Yeti Coolers* suggested that it is determinative that sophisticated software rather than an ordinary tape recorder is used to record the conversation, this analysis would not be persuasive. In *Ribas*, the California Supreme Court held that, if a conversation was "simultaneous[ly] disseminat[ed] to an unannounced second auditor," it was immaterial "whether that auditor be a person or mechanical device." 38 Cal. 3d at 362. Thus, it is not the method used to record the conversation that is material. As noted in *Javier*, it is material whether the recording device has the capability to allow an unannounced second auditor to eavesdrop in real time or merely the capability to allow the intended recipient of the communications to record and store the communications for later dissemination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

with Defendant's chat feature for purposes other than storage including data analytics and marketing/advertising to consumers." *Id.* ¶ 16. These allegations are conclusory and insufficient. No facts have been alleged in support of the contention that the software has these capabilities. Even if these were deemed factual allegations, the result would be the same. It is not alleged that the software could be used for data analytics or marketing/advertising by persons other than Super Bright. Even if LiveHelpNow created software for Super Bright, and even if that software stored communications for Super Bright so Super Bright could conduct its own data analytics and marketing efforts, this would not be sufficient to show that LiveHelpNow was eavesdropping on Super Bright's communications with its customers.

      b)  Whether the Communications Were Read While in Transit, Being Sent, or Being Received

Under the Wiretap Act, for communications with a website to be "intercepted," they "must be acquired during transmission, not while [they are] in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This is a "narrow definition" limited to "acquisition contemporaneous with transmission." *Id.* Other courts have applied *Konop* in the context of a CIPA claim and have dismissed them when there was no Wiretap Act "interception." *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). Thus, to state a claim under CIPA, a plaintiff must allege that the defendant "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Mastel v. Miniclip SA*, No. 2:21-cv-00124 WBS KJN, 2021 WL 2983198, at *4 (E.D. Cal. July 15, 2021).

The Complaint alleges that LiveHelpNow's code is embedded into the chat feature of Super Bright's website. Complaint ¶ 10. It also alleges that the code "automatically acquires and transmits" communications "without any active input" from any human. *Id.* ¶ 11. It then alleges that the code permits LiveHelpNow "to secretly intercept in real time, eavesdrop upon, and store transcripts of [Super Bright's] chat communications with unsuspecting website visitors." *Id.*

Several courts have rejected interception allegations almost identical to those made here. *American Eagle* determined that allegations that a third party "secretly intercept[ed] [the communications] (during transmission in real time)" were conclusory and "d[id] not allege specific facts as to how or when the interception takes place." 2023 WL 2469630, at *9. In addition, "[b]are allegations of recording and creating transcripts do not specifically allege that [the plaintiffs'] messages were intercepted while in transit." *Id. American Eagle* distinguished *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014), where it was alleged that the defendant scanned the content of certain private messages, and if there was a link to a web page contained in that message, the defendant counted that link as a "like" of the relevant page. *Id. Keurig* reached a similar outcome. There, the plaintiff had alleged that the defendant embedded code that "allow[ed] the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of [the defendant's] chat communications[.]" 2023 WL 3707181, at *5. It was determined that this allegation did "little more than restate the pleading requirement of real time interception." *Id.* Similarly, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), determined that "vague allegations about how [the third party's] data collection occurs 'in real time'" did not "provide fair notice to [the defendants] of when they believe [the third party] intercepts

Case 5:23-cv-01148-JAK-SP   Document 34   Filed 11/27/23   Page 11 of 13   Page ID #:332

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

their communications."[2]

*Martin v. Sephora USA, Inc.*, No. 122CV01355JLTSAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, No. 122CV01355JLTSAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) is similar. There, the plaintiff alleged that the defendant embedded code in its chat feature that creates transcripts of the chat and that a third-party vendor stored those transcripts. *Id.* at *11. It was determined that the allegation that the vendor was permitted to intercept the transcripts "during transmission and in real time" was conclusory and that no facts had been alleged showing that the vendor had intercepted plaintiff's communication itself. *Id.* at *10. Specifically, it was determined that the vendor's access to the transcripts occurred after the chat was transcribed rather than spontaneously occurring during transmission and in real time. *Id.*

The Complaint has the same shortcomings identified in *Martin*, *Keurig*, *Vizio*, and *American Eagle*. Alleging that the defendant's intercepted a communication in real time is insufficient, without specific facts about what was intercepted and when or how the interception took place. The Complaint here merely "restate[s] the pleading requirement of real time interception." *Keurig*, 2023 WL 3707181, at *5. Further, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [someone] is intercepting [the plaintiff's] data in transit." *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).

The cases relied on by Valenzuela are distinguishable. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022) involved third-party software that caused the plaintiff's web browser to send communications directly to the third party rather than going through the defendant, which has not been alleged here. In *United States v. Szymuszkiewicz*, 622 F.3d 701, 704 (7th Cir. 2010), *as amended* (Nov. 29, 2010), the government provided evidence that the communications in question went to a regional server, where two copies were made, one for the intended recipient and one for the eavesdropper. In *Szymuszkiewicz*, the copying occurred "on the server side" rather than "the [recipient's] side." *Id.* Only "the copying *at the server* was the unlawful interception . . . ." *Id. Yeti Coolers* is distinguishable because the plaintiff there offered "factual allegations regarding the routing of her chat messages through [the vendor's] servers that occurred simultaneously with her use of the Website's chat function" and no similar allegations are present here. 2023 WL 5736006, at *4. The other cases cited by Valenzuela are also distinguishable. In general, they concerned spyware or illicit access to the plaintiff's e-mail account, rather than the type of conduct allegedly engaged in by Super Bright.

In the alternative, Valenzuela argues that the word "while" only applies to the "in transit" portion of the second clause rather than the "sent or received" portion. Valenzuela is incorrect. The second clause reaches interceptions "while the [communication] is in transit or passing over any wire, line, or cable, or

---

[2] Super Bright also relies on *Esparza v. Lenox Corp.*, No. C 22-09004 WHA, 2023 WL 2541352, at *3 (N.D. Cal. Mar. 16, 2023), which is distinguishable. There, the court rejected as conclusory an allegation "that some unknown third party not involved in this action 'eavesdrops' somehow 'in real time.'" That left it unclear whether there was "an actual third-party individual that is simultaneously reading the customer chat" or whether there was "embedded code from a third-party software vendor that is automatically creating chat transcripts for someone other than defendant." *Id.* The Complaint in this action has identified Super Bright's alleged vendor, provided some level of detail about the services it provided, and alleges that the vendor used embedded code. Complaint ¶¶ 10-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). The repetition of the word "is" suggests that the word "while" applies to both the phrase "in transit or passing over any wire, line, or cable" and the phrase "being sent from, or received at any place within this state." Furthermore, the word "being" confirms that the interception must be contemporaneous with the sending or receipt of the message. Indeed, Valenzuela's argument has been repeatedly rejected. *See, e.g.*, *Keurig*, 2023 WL 3707181, at *6 ("Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California."); *Adler v. Community.com, Inc.*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) ("[U]nderstand[ing] section 631 to prohibit access to any communications received in California . . . would be an interpretation of extraordinary breadth . . . [and § 631] requires plausible allegations that the defendant 'read or learned the contents of a communication while the communication was in transit, or *in the process of being sent or received.*") (quoting *Mastel*, 2021 WL 2983198, at *4). The cases relied on by Valenzuela addressed different issues, holding that CIPA covers interceptions that take place while the communications are being sent from, or received at, any place in California, rather than holding that the simultaneity requirement does not apply to this portion of the second clause. *See Ribas*, 38 Cal. 3d at 359-60; *Revitch v. New Moosejaw, LLC*, Case No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *Google Assistant*, 457 F. Supp. 3d at 826.

   3. <u>Whether Valenzuela Adequately Alleged LiveHelpNow Violated the Third Clause of Cal. Penal Code § 631(a)</u>

Super Bright contends that Valenzuela's claim under the third clause requires a predicate violation of either the first or second clause and that no such violation has been adequately alleged. Motion at 21. To establish a violation of the third clause, a CIPA plaintiff "must establish that the information at issue . . . was obtained through a violation of the first or second clauses." *Google Assistant*, 457 F. Supp. 3d at 827. Because the Complaint has not adequately alleged a violation of the first or second clause, the allegations as to this clause are also insufficient.

   4. <u>Whether Valenzuela Adequately Alleged Super Bright Violated the Fourth Clause of Cal. Penal Code § 631(a)</u>

Under the fourth clause, Super Bright could be liable if it "aid[ed], agree[d] with, employ[ed], or conspire[d] with [LiveHelpNow] to unlawfully do, or permit, or cause to be done" any act in violation of the first three clauses. Cal. Penal Code § 631(a). However, because the Complaint has not adequately alleged any violation of the first three clauses by LiveHelpNow, it has not stated a claim against Super Bright under the fourth clause.

   5. <u>Leave to Amend</u>

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This "policy of favoring amendments to pleadings should be applied with 'extreme liberality.' " *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). " '[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)); *accord Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) ("dismissal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV23-01148 JAK (SPx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | Sonya Valenzuela v. Super Bright LEDs Inc. | | |

without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment").

Under these standards, leave to amend is warranted in this action.

**V.      Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED WITHOUT PREJUDICE**. Any amended complaint shall be filed within 21 days of the issuance of this Order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    tj